UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


MARIO DEMEDEIROS,
FERNANDO TEIXEIRA,
JOSE PIMENTAL,
ANTONIO COUTO and
ARMINDO ASSUNCAO,
    Plaintiffs,


       v.                               CIVIL ACTION NO.
                                           10-10668-PBS


UNITED ELECTRICAL, RADIO AND
MACHINE WORKERS OF AMERICA,
UNITED ELECTRICAL, RADIO AND
MACHINE WORKERS OF AMERICA
LOCAL 204, KIRKHILL-TA CO.
HASKON AEROSPACE,
    Defendants.




**REPORT AND RECOMMENDATION RE:**
**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT,**
**ASSESSMENT OF DAMAGES AND ENTRY OF JUDGMENT**
**(DOCKET ENTRY # 10); DEFENDANTS' CROSS-MOTION**
**FOR DISMISSAL WITH PREJUDICE (DOCKET ENTRY # 12)**

**MEMORANDUM AND ORDER RE:**
**DEFENDANTS' MOTION FOR SANCTIONS**
**(DOCKET ENTRY # 11)**

**May 25, 2011**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for an entry of a

default judgment under Rule 55(b), Fed. R. Civ. P. ("Rule

55(b)"), filed by plaintiffs Mario DeMedeiros, Fernando Teixeira,

Jose Pimental, Antonio Couto and Armindo Assuncao ("plaintiffs").

(Docket Entry # 10). Plaintiffs seek a default judgment against defendants United Electrical, Radio and Machine Workers of America ("UE National") and United Electrical, Radio and Machine Workers of America Local 204 ("Local 204") (collectively: "defendants") because they failed to answer or defend against the current action. Also pending before this court is a cross motion to dismiss with prejudice filed by defendants and a motion for sanctions under Rule 11, Fed. R. Civ. P. ("Rule 11") filed by defendants. (Docket Entry ## 12 & 11). Plaintiffs oppose these motions. (Docket Entry ## 19 & 18). After conducting a hearing on February 3, 2011, this court took the motions (Docket Entry ## 10, 11 & 12) under advisement.

## BACKGROUND

On April 20, 2010, plaintiffs filed the original complaint alleging breach of the duty of fair representation, breach of contract and promissory estoppel against Local 204 and Kirkhill-TA Co. Haskon Aerospace ("Haskon"), plaintiffs' former employer.[1] The original complaint did not name UE National as a defendant. For jurisdiction, the original complaint asserts diversity of citizenship under 28 U.S.C. § 1332 ("section 1332"). (Docket Entry # 1).

The complaint stems from an employment dispute surrounding

---

[1]  Plaintiffs voluntarily dismissed Haskon on July 29, 2010. (Docket Entry # 5).

plaintiffs' termination from Haskon.  In or around July 2009, Haskon approached Local 204 with a choice between reduced hours for all union employees or layoffs for some.  Local 204 chose layoffs, causing plaintiffs and others to lose their jobs while allowing the remaining union employees to continue working without a reduction in pay.  According to the complaint, Local 204 and Haskon "made promises to the employees" that they would be recalled if work became available.  In or around November 2009, work increased but, rather than recalling the laid off employees, Haskon and Local 204 allowed existing employees to work overtime.  (Docket Entry # 1).  In October 2010, the plant closed and plaintiffs were never recalled.  (Docket Entry # 18).

On February 11, 2010, plaintiffs filed a complaint against Local 204 and Haskon with the National Labor Relations Board ("NLRB").  The charges in that complaint were identical to those in this action.  (Docket Entry # 14, Ex. 1 & 2).  On April 20, 2010, the NLRB concluded that "further proceedings are not warranted" due to "insufficient evidence."  (Docket Entry # 13).  That same day, plaintiffs initiated this action by filing the original complaint.  (Docket Entry # 1).

On July 29, 2010, plaintiffs voluntarily dismissed Haskon as a defendant.  (Docket Entry # 5).  Also on July 29, 2010, plaintiffs filed a motion to add UE National as an indispensable party, asserting that UE National, the national counterpart to

Local 204, was "inadvertently left out of the original complaint." (Docket Entry # 4). The motion correctly identifies UE National's address as One Gateway Center, Suite 1400, Pittsburgh, Pennsylvania. On August 30, 2010, the court allowed the motion to add UE National as a defendant. Defendants assert that UE National was never served with this motion, the order granting the motion or a complaint that named UE National as a defendant. (Docket Entry # 12).[2]

The return of summons indicates that Local 204 was served on August 20, 2010, by a constable leaving the summons and complaint at Local 204's "last & usual place of business," at 5 Hill Street, Taunton, Massachusetts. (Docket Entry # 8). UE National was served on September 16, 2010. A constable "left it at United Electrical, Radio and Machine Workers of America's last and usual place of business," which was also identified as 5 Hill Street, Taunton, Massachusetts. (Docket Entry # 9).

Receiving no answer from either defendant, plaintiffs filed the motion for a default judgment, assessment of damages and entry of judgment pursuant to Rule 55(b) on December 6, 2010. (Docket Entry # 10). Defendants responded with the cross motion

---

[2]    The motion to add UE National as an indispensable party states, "Service has not yet been made on all of the Defendants" as of July 29, 2010. (Docket Entry # 4). On August 3, 2010, plaintiffs filed a certificate of service with regards to the motion, indicating that "the foregoing amendment to the Complaint has been served upon the parties in this case on August 3, 2010, by first-class mail." (Docket Entry # 6). The certificate of service does not identify the service address of UE National.

to dismiss and the motion for sanctions.  (Docket Entry ## 12 & 11).

Turning to the parties' arguments, defendants submit that complete diversity is lacking between the parties as required by section 1332.  See Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (section 1332 "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant").[3]  Defendants suggest that plaintiffs may have intended to invoke jurisdiction under 29 U.S.C. § 185(a) ("section 185(a)"), otherwise known as section 301(a) of the Labor Management Relations Act ("LMRA").[4]  Assuming that plaintiffs did bring their duty of fair representation claim under section 185(a), defendants then argue that the complaint is time barred by the six month statute of limitations under 29

---

[3]  Four plaintiffs reside in Massachusetts and the fifth plaintiff resides in Rhode Island.  Local 204 and former defendant Haskon are located in Taunton, Massachusetts, and UE National is located in Pittsburg, Pennsylvania.  (Docket Entry ## 1 & 4).  Because multiple plaintiffs and defendants are from Massachusetts, defendants correctly maintain that there is not complete diversity.  (Docket Entry # 12).

[4]  Section 185(a) provides in relevant part:

> Suits for violation of contract between an employer and a
> labor organization . . . or between any such labor
> organizations, may be brought in any district court of the
> United States having jurisdiction of the parties.

Defendants further argue, however, that section 185(a) does not confer jurisdiction because there is no specific "violation of contract" alleged nor is the dispute between an employer and a labor organization.  (Docket Entry # 12).

U.S.C. § 160(b) ("section 160(b)").[5]  Defendants also contend

that various claims in the complaint are preempted by the NLRB's

decision not to litigate plaintiffs' claims.

Further, defendants argue that the complaint should be

dismissed for inadequate service of process in violation of Rule

4, Fed. R. Civ. P. ("Rule 4").  For service on an "unincorporated

association" like a labor union, Rule 4(h) requires process to be

served on an "officer, a managing or general agent, or any other

agent authorized by appointment or by law to receive service of

process," or else in accordance with Rule 4(e)(1).  Rule 4(e)(1)

indicates that service may be made "following state law for

serving a summons in an action brought in courts of general

jurisdiction in the state where the district court is located or

where service is made."  Rule 4(e)(1), Fed. R. Civ. P. ("Rule

4(e)(1)").  In this case, the applicable state rule is Rule

4(d)(2), Mass. R. Civ. P., which dictates that service on a

corporation be delivered to an "officer, to a managing or general

agent, or to the person in charge of the business . . . or by

delivering such copies to any other agent authorized by

_____

[5]    Section 185(a) does not contain a statute of limitations.  The
Supreme Court in DelCostello v. International Brotherhood of
Teamsters concluded, however, "that § 10(b) [29 U.S.C. § 160(b)]
should be the applicable statute of limitations governing the
suit, both against the employer and against the union."
DelCostello, 462 U.S. 151, 155 (1983).  Section 160(b), which
concerns the filing of unfair labor practice charges, provides,
"no complaint shall issue based upon any unfair labor practice
occurring more than six months prior."

appointment or by law to receive service of process."

Plaintiffs assert that service was proper because the summons and complaint were mailed to both Local 204 and UE National at 5 Hill Street, Taunton, Massachusetts and were not returned undelivered. Plaintiffs also contend that a constable left the summons and complaint at this last and usual place of business. Defendants argue that, even disregarding the fact that UE National is not located at this address, this service was inadequate under Rule 4(e)(1) and Rule 4(d)(2), Mass. R. Civ. P., because it was not effected through personal service on a managing or general agent or a person otherwise authorized to receive service. (Docket Entry # 12). Defendants also point out that the complaint neither names UE National as a defendant nor asserts any claims against it.[6]

Finally, defendants argue that the complaint is subject to dismissal under Rule 12(b)(6), Fed. R. Civ. P. ("Rule 12(b)(6)") for failure to state a claim for relief. According to defendants, plaintiffs have no legally cognizable claim because they are unable to identify a provision in the collective bargaining agreement ("CBA") between Local 204 and Haskon that would support their assertion that Local 204's duty of fair

---

[6] Defendants first argued that the original complaint did not assert claims against UE National. (Docket Entry # 12). After the amended complaint was filed, however, defendants reiterated this argument, saying that the amended complaint also fails to name UE National as a defendant or assert claims against it. (Docket Entry # 26).

representation was violated. (Docket Entry # 12).

In the motion for sanctions, defendants point to these errors, particularly those relating to the inadequate service and the fact that UE National is not named as a defendant in either the original or the amended complaint. They characterize plaintiffs' actions as a calculated effort to conceal the suit from UE National until they could obtain a default judgment against it. (Docket Entry # 11). Plaintiffs respond that the facts do not warrant Rule 11 sanctions and that the motion for sanctions is an attempt to intimidate plaintiffs. (Docket Entry # 19).

On December 28, 2010, plaintiffs filed a motion for leave to file an amended complaint (Docket Entry # 16) which this court allowed on January 11, 2011.[7] The only differences between the amended complaint and the original complaint are the jurisdictional basis, which plaintiffs now identify as section 185(a), and the style, which now includes UE National. The amended complaint does not identify UE National in the description of the parties nor are any of the counts directed against it. In fact, apart from the jurisdiction and style, the amended complaint is a copy of the original complaint filed in April. The amended complaint sets out the following claims: (1)

_____

[7] Though the motion to amend was allowed on January 11, 2011, plaintiffs filed the proposed amended complaint two weeks earlier on December 28, 2010. (Docket Entry # 17).

breach of the duty of fair representation against "the Union" which plaintiff defines as Local 204 (Count I); (2) breach of contract against Local 204 (Count II); (3) breach of contract against Haskon (Count III); (4) wrongful termination against Haskon (Count IV); and (5) promissory estoppel against both Haskon and Local 204 (Count V). (Docket Entry # 17). Further, although plaintiffs voluntarily dismissed Haskon on July 29, 2010 (Docket Entry # 5), the amended complaint supersedes the original complaint. See Connectu LLC v. Zuckerberg, 522 F.3d 82, 96 (1st Cir. 2008) (holding "that the amended complaint, filed as of right, superseded and replaced the original complaint"). Here, the amended complaint names Haskon as a defendant and asserts a number of claims against it.

DISCUSSION

I. <u>Motion for Default Judgment</u>

Plaintiffs seek a default judgment under Rule 55(b) as a result of defendants' failure to answer or defend against this action. (Docket Entry # 10). It is decidedly preferable to hear a case on the merits than to dispose of it through a default judgment. See Stewart v. Astrue, 552 F.3d 26, 28 (1st Cir. 2009) ("[f]ederal law favors the disposition of cases on the merits, and, as a result, 'a default judgment is a drastic sanction that should be employed only in an extreme situation'") (quoting

9

Affanato v. Merrill Bros., 547 F.2d 138, 140 (1st Cir. 1977)).

Default judgments, however, may prove necessary in situations
where a party refuses to participate.  See Niemic v. Maloney, 409
F.Supp.2d 32, 37 (D.Mass. 2005) ("[d]efault judgments . . . are
intended to protect diligent parties whose adversaries are
clearly unresponsive").

According to plaintiffs, defendants failed to answer despite
being served the summons and complaint on two separate occasions.
(Docket Entry # 18).  To defeat such a motion, the defendants
must demonstrate that they had good cause for the default.  See
Indigo America, Inc. v. Big Impressions, LLC, 597 F.3d 1, 3 (1<sub>s</sub><sup>t</sup>
Cir. 2010) ("[u]ltimately, the burden of demonstrating good cause
lies with the party seeking to set aside the default").[8]  Good
cause is a "mutable standard" that takes into consideration a
variety of factors which may vary in applicability and

---

[8]  Good cause is generally considered when determining whether it
is appropriate to set aside a default judgment under Rule 55(c),
Fed. R. Civ. P.  The good cause analysis is also used to
determine whether entry of default judgment under Rule 55(b) is
warranted.  See Steele v. Turner Broadcasting System, Inc., 746
F.Supp.2d 231, 235 (D.Mass. 2010).  As explained by the Steele
court:

> In deciding whether to enter a default judgment, it is
> prudent for the Court to consider whether that judgment will
> subsequently be set aside, thus rendering the entry of
> default judgment futile . . . The First Circuit has laid out
> a non-exhaustive list of factors that courts may consider
> when determining whether good cause exists to set aside a
> default judgment.

Id.

significance from case to case.  See Coon v. Grenier, 867 F.2d
73, 76 (1ˢᵗ Cir. 1989); accord KPS & Associates, Inc. v. Designs
by FMC, Inc., 318 F.3d 1, 12 (1ˢᵗ Cir. 2003); see also General
Contracting & Trading co., LLC. v. Interpole, Inc., 899 F.2d 109,
112 (1ˢᵗ Cir. 1990) ("Rule 55(c) determinations are case-
specific," and must be made "in a practical, commonsense manner,
without rigid adherence to, or undue reliance upon, a mechanical
formula").

The First Circuit in Indigo America Inc. v. Big Impressions,
LLC. reiterated seven factors that may be considered for good
cause:

> (1) whether the default was willful, (2) whether setting it
> aside would prejudice the adversary, (3) whether a
> meritorious defense is presented, (4) the nature of the
> defendant's explanation for the default; (5) the good faith
> of the parties; (6) the amount of money involved; and (7)
> the timing of the motion.

Indigo Am., 597 F.3d 1, 4-5 (1ˢᵗ Cir. 2010) (citing McKinnon v.
Kwong Wah Restaurant, 83 F.3d 498, 503 (1ˢᵗ Cir. 1996)).  It is
the defendants' burden to demonstrate that these factors weigh in
their favor.  See Maine Nat. Bank v. F/V Explorer, 833 F.2d 375,
378 (1ˢᵗ Cir. 1987) ("party seeking to have a default judgment
set aside 'bears the burden of showing good reason for the
default and the existence of a meritorious defense'") (quoting
American Foreign Ins. Ass'n v. Commercial Ins. Co., 819 F.2d 331,
336 (1ˢᵗ Cir. 1987)).  An analysis of these factors demonstrates
that defendants have satisfied this burden.

11

In the cross motion to dismiss, defendants argue that the default was not willful. In fact, defendants contend that, due to improper service, UE National was not aware that it was being sued. (Docket Entry # 12). According to defendants, the first time UE National learned of the action was when it received the motion for default judgment at its correct address in Pittsburg, Pennsylvania. Defendants correctly posit that UE National's failure to answer or defend, therefore, was not willful. Defendants also note that service was improper with respect to Local 204. As defendants point out in the cross motion to dismiss, service was rendered outside the 120 day time limit prescribed by Rule 4(m), Fed. R. Civ. Pro. ("Rule 4(m)"), and it was not effected on a person authorized to receive service for Local 204 as required by Rule 4(h), Rule 4(e)(1) and Rule 4(d)(2), Mass. R. Civ. P.

The motion for default as well as the attached affidavit make no reference to defendants' conduct or whether defendants' default was willful.[9] Moreover, the facts do not support such a contention. The record reflects that service was accomplished through the mail and through a constable leaving the summons and

---

[9] The motion for default judgment states, "The Plaintiffs in the above-entitled matter and, pursuant to Fed.R.Civ.P. 55(b), move that this Honorable Court enter a Default Judgment for the relief sought in their complaint, and for reasons say that the Defendants have failed to answer and/or defend this action." (Docket Entry # 10). It does not specify what those reasons might be. The affidavit contains information relating to attorneys' fees. (Docket Entry # 10, Ex. 1).

complaint at 5 Hill Street, Taunton, Massachusetts.  (Docket
Entry # 8).  Defendants were not served through personal service
on an officer, a managing or general agent or a person otherwise
authorized to receive service of process.  Because defendants
were not properly notified that they were being sued, defendants'
failure to answer was not willful.

Second, the facts fail to indicate that plaintiffs might be
prejudiced by a failure to enter a default judgment.  Prejudice
in the context of a default judgment generally includes "loss of
evidence, increased difficulties of discovery, or an enhanced
opportunity for fraud or collusion."  FDIC v. Francisco Inv.
Corp., 873 F.2d 474, 479 (1st Cir. 1989).  Mere delay does not
constitute prejudice.  See Indigo America, 597 F.3d at 4 (citing
KPS & Associates, 318 F.3d at 15).  Plaintiffs do not allege that
evidence would be lost or that they would have any difficulties
with discovery or that defendants would engage in fraud or
collusion if the motion for a default judgment is denied.
Prejudice is therefore absent.

The third factor to consider for good cause is whether the
defendants are able to present a meritorious defense.[10]
Defendants argue that plaintiffs are unable to establish a breach

---

[10]    The meritorious defense factor "does not go so far as to
require that the movant demonstrate a likelihood of success on
the merits.  Rather, a party's averments need only plausibly
suggest the existence of facts which, if proven at trial, would
constitute a cognizable defense."  Coon v. Grenier, 867 F.2d 73,
77 (1st Cir. 1989).

of the duty of fair representation on the merits because there was no breach of the CBA.  As the Supreme Court explained in DelCostello, a suit under section 185(a) "comprises two causes of action.  The suit against the employer rests on § 301 [section 185(a)], since the employee is alleging a breach of the collective bargaining agreement.  The suit against the union is one for breach of the union's duty of fair representation." DelCostello, 462 U.S. at 164.  Furthermore, "'the two claims are inextricably interdependent' . . . The employee may, if he chooses, sue one defendant and not the other, but the case he must prove is the same whether he sues one, the other, or both." Id. at 164-165 (quoting Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-571 (1976)).  Under this construction, a duty of fair representation claim against the union cannot survive without an underlying breach of contract by the employer.  Id.; see also Hines, 424 U.S. at 570-571 ("To prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of the duty by the Union") (emphasis added).  Thus, in order to succeed in a duty of fair representation claim, plaintiffs must allege a violation of the collective bargaining agreement.  See Moreau v. Local Union No. 247, Intern. Broth. of Firemen and Oilers, AFL-CIO, 851 F.2d 516, 520 (1st Cir. 1988) ("[the plaintiff's] successful claim against

14

the union is dependent at least upon a finding that the Company breached the collective bargaining agreement").

Plaintiffs submit that the CBA was breached when defendants "failed to institute plant wide hourly work week reductions" and when Local 204 and Haskon allowed existing employees to work overtime rather than recall laid off employees. (Docket Entry # 17). For Local 204 to institute reduced hours, it must modify the existing CBA, which calls for a 40 hour work week. (Docket Entry # 24, Ex. 2, p. 8). Plaintiffs' claim that Local 204 and Haskon failed to institute reduced working hours is, therefore, not a breach of contract claim but a request that the contract be changed. Moreover, the CBA is very clear in its assignment of authority over the hiring and recall processes. The CBA gives the employer discretion over work assignments, recall procedures, bidding and transfers, layoffs and management.[11] (Docket Entry # 24, Ex. 2, pp. 5, 10, 11, 16 & 22). In light of this discretion, Haskon's decision to institute layoffs and not to recall laid off workers may not be a violation of the CBA. Defendants' assertion that there is no breach of contract thus constitutes a meritorious defense against Count I.

_____

[11] Section 14 of the CBA states, "When there is insufficient work, in the Company's opinion . . . the Company, in its sole discretion, shall determine whether to lay off Union Employees." (Docket Entry # 24, Ex. 2, p. 16). Section nine, which describes the call-back procedure, again assigns discretion to "the Company." (Docket Entry # 24, Ex. 2, p. 10).

The fourth factor identified by the court in <u>Indigo America</u> is the nature of the defendants' explanation for the default. Here, defendants' default was a result of inadequate service of process. The facts do not indicate (and plaintiffs do not allege) that defendants attempted to evade proper service or take any other action to impede plaintiffs' rights. This factor, therefore, also weighs in defendants' favor.

The fifth factor to consider is the parties' good faith. Plaintiffs' delay in serving the motion for default raises an inference that plaintiffs sought to deny defendants the full benefit of the 14 day response period. Beyond this inference, the record does not indicate either plaintiffs' or defendants' lack of good faith to a significant degree.

The sixth and seventh factors are the amount of money involved and the timing of the motion. Neither factor has any particular significance in this case.

In sum, defendants have satisfied their burden of demonstrating that the factors in <u>Indigo America</u> weigh against an entry of default judgment. Defendants' default was not willful, the failure to enter default judgment will not prejudice plaintiffs and defendants presented a meritorious defenses for the duty of fair representation claim. The remaining factors are relatively neutral. On balance, a default judgment is not appropriate.

II.  <u>Cross Motion to Dismiss</u>

Defendants seek dismissal of plaintiffs' claims with prejudice.  According to defendants, the complaint is subject to dismissal because inter alia the doctrine of preemption, the applicable statute of limitations, the inadequate service of process and the lack of jurisdiction.[12]  Defendants also argue that the complaint fails to state a cause of action against UE National because it does not identify UE National as a defendant nor does it assert any claims against UE National.[13]  (Docket Entry # 12).  Defendants direct the statute of limitations argument primarily against plaintiffs' duty of fair representation claim, i.e., Count I.

When considering a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a "court must 'take all factual allegations as true and draw all reasonable inferences in favor of the plaintiff.'"  <u>Pettengill v. Curtis</u>, 584 F.Supp.2d 348, 362 (D.Mass. 2008) (quoting <u>Rodriguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 96 (1st Cir. 2007)).  To survive a Rule 12(b)(6)

_____

[12]  For purposes of this decision, this court will consider the allegations in the amended complaint.  Defendants filed the motion to dismiss before the plaintiffs filed the amended complaint.  However, the amended complaint's only substantive change to the original complaint was the assertion of jurisdiction under section 185(a) in lieu of diversity jurisdiction, and defendants anticipated such a change in the motion to dismiss.
[13]  As previously noted, this argument was first directed against the original complaint and then reiterated against the amended complaint.  (Docket Entry ## 12 & 26).

motion to dismiss, the plaintiff's complaint must include factual allegations that when taken as true demonstrate a plausible claim to relief even if actual proof of the facts is improbable.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-558 (2007); <u>see</u> <u>Ashcroft v. Iqbal</u>, __U.S.__, 129 S.Ct. 1937, 1949 (2009) ("claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  Additionally, "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief."  <u>Jones v. Bock</u>, 549 U.S. 199, 215 (2007).

A.  <u>Statute of Limitations</u>

Defendants submit that the complaint is untimely under section 160(b).  (Docket Entry # 12).  This statute applies to duty of fair representation claims brought under section 185(a).  <u>See</u> <u>DelCostello</u>, 462 U.S. at 155.  Hence, the argument addresses only the timeliness of Count I.

As previously noted, section 160(b) prescribes a six month statute of limitations period.  <u>Id</u>.  The statute of limitations begins to run when the plaintiffs knew or should have known of the alleged violation.  <u>See</u> <u>Adorno v. Crowley Towing & Transp. Co.</u>, 443 F.3d 122, 126 (1st Cir. 2006) ("the clock start[s] ticking when the prospective plaintiffs knew, or reasonably

18

should have known, of the alleged wrongful acts"); accord
Arriaga-Zayas v. Intern. Ladies' Garment Workers' Union, 835 F.2d
11, 13 (1st Cir. 1987) ("[t]he limitations clock is activated by
knowledge, actual or constructive; it begins to tick when the
challenged conduct comes to light").  The actions complained of
in this case took place between July and August 2009 when Local
204 and Haskon initiated layoffs and plaintiffs lost their jobs.
The limitations period therefore began to run when Local 204
instituted layoffs.  The six month statute of limitations thus
bars the filing of complaints after February 2010.  Because
plaintiffs did not file the original complaint until April 20,
2010, defendants argue that Count I is subject to dismissal as
untimely.

    Plaintiffs respond that the filing of the complaint with the
NLRB on February 11, 2010, tolls the six month limitations
period.  They contend that the statute ceased to run between
February 11, 2010, when they filed their complaint with the NLRB,
and April 20, 2010, when the NLRB dismissed their claims.  The
April 20, 2010 filing of the complaint in this court was
therefore timely, according to plaintiffs.  (Docket Entry # 18).

    The First Circuit rejected plaintiffs' argument in Arriaga-
Zayas v. International Ladies' Garment Workers Union, 835 F.2d 11
(1st Cir. 1987).  The Arriaga-Zayas court unequivocally stated,
"We rule that the filing of an unfair labor practice charge with

19

the NLRB does not toll the statute of limitations on a hybrid §
301/fair representation action arising out of the same nucleus of
operative fact." Arriaga-Zayas, 835 F.2d at 14; accord Trafalgar
Capital Associates, Inc. v. Cuomo, 159 F.3d 21, 36 (1st Cir.
1998) (holding that statute of limitations is not tolled when
administrative proceedings are permissive). Because the statute
of limitations was not tolled by the NLRB proceeding, plaintiffs'
first argument fails.

Plaintiffs next argue that Local 204's failure to reinstate
them was a continuing violation that lasted from the initial
layoffs in August 2009 until the plant closed in October 2010.
The continuing violation doctrine is "an equitable exception that
allows an employee to seek damages for otherwise time-barred
allegations if they are deemed part of an ongoing series of
discriminatory acts and there is 'some violation within the
statute of limitations period that anchors the earlier claims.'"
O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001)
(quoting Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir.
1998)). To prove the existence of a continuing violation, the
plaintiffs must demonstrate not only that the initial act
constituted a violation but that each subsequent act was in and
of itself a violation. See Valezquez v. Chardon, 736 F.2d 831,
833 (1st Cir. 1984); see also LeGoff v. Trustees of Boston
University, 23 F.Supp.2d 120, 127 (D.Mass. 1998) ("[a] serial

violation is one 'composed of a number of discriminatory acts emanating from the same discriminatory animus, each constituting a separate wrong'") (quoting <u>Jensen v. Frank</u>, 912 F.2d 517, 522 (1st Cir. 1990)).  Furthermore, it is the plaintiffs' burden to show that at least one act occurred within the statute of limitations period.  See <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 307 (1st Cir. 1997) ("to state a claim under this type of continuing violation, [the plaintiff] would have to show that at least one actionable violation occurred within the relevant time period"); <u>see</u> <u>also</u> <u>Mack v. Great Atlantic and Pacific Tea Co., Inc.</u>, 871 F.2d 179, 183 (1st Cir. 1989) (the "plaintiff retained the burden of demonstrating that <u>some</u> discriminatory act transpired within the appropriate time frame) (emphasis in original).

Here, plaintiffs first fail to establish that Local 204's decision to accept layoffs rather than reduced hours was an initial breach of the duty of fair representation because there was no accompanying violation of the CBA.  Second, even if plaintiffs could describe Local 204's failure to implement reduced hours as a violation of the duty of fair representation, there is no subsequent act within the statute of limitations to preserve the claim.  The complaint only alleges that Local 204 chose to accept layoffs over reduced working hours and that plaintiffs were laid off as a result.  As set out in the complaint, Local 204 simply took no action between the layoffs

and the time the plant closed.  The First Circuit in <u>Morrison v.</u>
<u>Carleton Woolen Mills, Inc.</u> determined that failure to reinstate
after an initial layoff did not constitute a continuing
violation, saying, "the Company's inaction is not enough."
<u>Morrison</u>, 108 F.3d 429, 443 (1st Cir. 1997); <u>see</u> <u>also</u> <u>Valezquez</u>
<u>v. Chardon</u>, 736 F.2d 831, 833 (1st Cir. 1984) (holding that each
subsequent refusal to reinstate must constitute a separate
violation in order to apply the continuing violation doctrine).
The First Circuit has repeatedly upheld a distinction between
acts which constitute a continuing violation and isolated acts
which merely have lasting consequences.  <u>See</u> <u>Muniz-Cabrero v.</u>
<u>Ruiz</u>, 23 F.3d 607, 610 (1st Cir. 1994) ("there is a 'critical
distinction between a continuing act and a singular act that
brings continuing consequences in its roiled wake'") (quoting
<u>Johnson v. Rodriguez</u>, 943 F.2d 104, 108 (1st Cir. 1991)); <u>see</u>
<u>also</u> <u>De Leon Otero v. Rubero</u>, 820 F.2d 18, 19 (1st Cir. 1987)
(the "defendants' refusal to reinstate [the plaintiff] after the
Board's favorable decision was not a separate act of
discrimination, but rather a consequence of his initial
demotion").  Plaintiffs cannot demonstrate that Local 204's
failure to recall them was a continuing violation and not simply
a consequence of the initial layoff.  Accordingly, Local 204's
failure to reinstate plaintiffs is not a continuing violation and
plaintiffs cannot escape the six month statute of limitations.

In sum, the six month limitations period began to run in July and August 2009 when defendants initiated layoffs and plaintiffs lost their jobs. Plaintiffs fail in their burden to show a continuing violation. The NLRB proceeding did not toll the statute of limitations. The facts as alleged in the complaint thus demonstrate that the duty of fair representation claim is time barred. Therefore, Count I is subject to dismissal. See Jones v. Bock, 549 U.S. at 215 (if "allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal").

B.  Jurisdiction

Defendants contend that the complaint is subject to dismissal for lack of jurisdiction. According to defendants, jurisdiction under section 185(a) is not appropriate because there is no breach of contract. (Docket Entry # 12). Though defendants focus this argument against the duty of fair representation claim, it has implications for the remaining counts as well.

Plaintiffs allege jurisdiction under section 185(a). (Docket Entry # 17). As previously noted, section 185(a) grants jurisdiction for breach of contract claims against labor unions and employers where there has been a violation of a collective bargaining agreement and a breach in the duty of fair representation. See DelCostello, 462 U.S. at 164. Plaintiffs'

duty of fair representation claim (Count I) is barred by the six month statute of limitations in section 160(b). The question remains whether section 185(a) authorizes jurisdiction over the remaining counts.

The court in American Federation of State, County and Municipal Employees Council 93 v. Gordon found that jurisdiction was not appropriate where the "[p]laintiff's claims do not fall within the scope of § 301 of the LMRA [section 185(a)]." 505 F.Supp.2d 183, 189 (D.Mass. 2007). Here, then, the task is to determine whether counts II through V fall within the scope of section 185(a). The plaintiff in Gordon alleged breach of fiduciary duty, intentional interference with contractual relations and deceit. Id. at 185. The court found that jurisdiction could not be exercised because none of these state common law claims were based on a breach of the collective bargaining agreement and therefore they could not be brought under section 185(a).[14] Id. at 189. Here, counts II through V each reference a "contractual relationship" between plaintiffs

_____

[14]   The court suggested, however, that even if these claims could be interpreted under the collective bargaining agreement, they would be barred by the six month statute of limitations under section 160(b). Gordon, 505 F.Supp.2d at 191; see also Williams v. Western Electric Corp., Inc., 580 F.Supp. 1462, 1465 (D.Mass. 1984) (ruling that the plaintiff's claims were barred by the statute of limitations in section 160(b) after it determined that the "[p]laintiff's attempts to characterize her action as a common law breach of contract claim under state law cannot and does not operate to change the fact that her claims arise, if at all, under 29 U.S.C. § 185(a)").

24

and Local 204 and Haskon, and counts III through V mention the CBA explicitly.  None of these counts, however, alleges that any provision of the CBA was breached.  Without this crucial element, jurisdiction cannot be exercised under section 185(a).  As the Supreme Court explained in <u>Franchise Tax Board of State of California v. Construction Laborers Vacation Trust for Southern California</u>:

> But even under [section 185(a)] we have never intimated that any action merely relating to a contract within the coverage of [section 185(a)] arises exclusively under that section. For instance, a state battery suit growing out of a violent strike would not arise under [section 185(a)] simply because the strike may have been a violation of an employer-union contract.

<u>Franchise Tax</u>, 463 U.S. 1, 25 n.28 (1983) (citing <u>United Auto Workers v. Russell</u>, 356 U.S. 634, 640-642 (1958)).  Plaintiffs' claims are similarly situated.  Though counts II through V may be related to the CBA between Haskon and Local 204, plaintiffs do not allege that these counts arise out of a breach of the CBA. Section 185(a) requires plaintiffs to show both a breach of contract by the employer and a breach of the duty of fair representation by the union.  See <u>DelCostello</u>, 462 U.S. at 164. Merely alleging a relationship based on the CBA, without a corresponding allegation of a violation of the CBA, is not sufficient to bring plaintiffs' remaining claims within the scope of section 185(a).  See <u>Franchise Tax</u>, 463 U.S. at 25.  Because plaintiffs have not asserted any other grounds for jurisdiction,

25

plaintiffs' remaining claims, i.e., counts II through V, are subject to dismissal for lack of jurisdiction.

III.  Motion for Sanctions

Defendants seek sanctions against plaintiffs' counsel pursuant to Rule 11.  (Docket Entry # 11).  Rule 11 requires counsel to make an "inquiry reasonable under the circumstances" to ensure that their filings with the court are "not being presented for any improper purpose," that the legal arguments "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that "factual contentions have evidentiary support" or will likely have evidentiary support with further discovery.  Rule 11(b), Fed. R. Civ. P.; see Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990) (filings must be "factually well-grounded, legally tenable and not interposed for any improper purpose"); Mariani v. Doctors Associates, Inc., 983 F.2d 5, 7 (1st Cir. 1993).

The motion, however, fails to indicate that defendants complied with the procedural requirements of Rule 11.  The party seeking sanctions is required to serve the opposing party with the motion 21 days prior to filing the motion with the court.  Rule 11(c)(2), Fed. R. Civ. P. (the motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately

26

corrected within 21 days after service"). The First Circuit explained in Lamboy-Ortiz, "Rule 11 motions are governed by carefully wrought procedures designed to 'stress the seriousness of a motion for sanctions.'" Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 244 (1st Cir. 2010) (quoting Advisory Committee's Note). The Lamboy-Ortiz court ruled that failure to comply with this procedural requirement "disqualif[ies] Rule 11 as a basis for sanctions." Lamboy-Ortiz, 630 F.3d at 244 (citing Radcliffe v. Rainbow Constr. Co., 254 F.3d 772, 789 (9th Cir. 2001)).

Failure to provide the opposing party the opportunity to withdraw or correct the offending paper as contemplated by the rule precludes an award of Rule 11 sanctions. See Elliott v. Tilton, 64 F.3d 213, 216 (5th Cir. 1995) (court characterizes the safe harbor provision as "mandatory"). Here, the certificate of service indicates that the motion for sanctions was filed with this court on the same day it was served on plaintiffs. (Docket Entry # 11). Absent a showing that defendants complied with the 21 day safe harbor provision, an award of sanctions is not appropriate.

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[15] that the motion for a default judgment (Docket Entry

---

[15] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the

# 10) be **DENIED** and that the cross motion to dismiss (Docket

Entry # 12) be **ALLOWED.**  The motion for sanctions (Docket Entry #

11) is **DENIED.**


        /s/ Marianne B. Bowler
        **MARIANNE B. BOWLER**
        United States Magistrate Judge

---

Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  <u>United States v. Escoboza Vega</u>, 678 F.2d 376, 378-379 (1st Cir. 1982); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).